IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JERARD L. BUTTZ, | ) | CASE NO. 8:04CV371 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| vs. | ) | AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on the denial, initially and on reconsideration, of the Plaintiff's disability insurance ("disability") benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. The Court has carefully considered the record (Filing No. 13) and the parties' briefs (Filing Nos. 18, 21).

**PROCEDURAL BACKGROUND**

The Plaintiff, Jerard L. Buttz, filed his initial application for disability benefits on or about May 20, 2002. (Tr. 69-71.) The claim was denied initially (Tr. 25-28) and on reconsideration (Tr. 31-34). A hearing was held before Administrative Law Judge ("ALJ") John W. Belcher on February 10, 2004, (Tr. 336-65.) On March 26, 2004, the ALJ issued a decision finding that Buttz was not "disabled" within the meaning of the Act and therefore is not eligible for disability benefits. (Tr. 15-20.) On July 8, 2004, after considering additional evidence (Tr. 8), the Appeals Council denied Buttz's request for review. (Tr. 5-7.) Buttz now seeks judicial review of the ALJ's determination as the final decision of the Defendant, the Commissioner of the Social Security Administration ("SSA"). (Filing No. 1.)

Buttz claims that the ALJ's decision was incorrect in the following ways: 1) the ALJ failed to find Dr. Thomas Franco, Buttz's treating physician, a "treating source" physician;

2) the ALJ failed to give Dr. Franco's opinion controlling weight; and 3) substantial evidence does not support the ALJ's decision.

Upon careful review of the record, the parties' briefs and the law, the Court concludes that the ALJ's decision denying benefits is not supported by substantial evidence on the record as a whole. The Court finds that the evidence supports a finding of a disabililty. Therefore, the Court reverses the Commissioner's decision and remands this action for an award of benefits.

## FACTUAL BACKGROUND

Buttz is now thirty-nine years old. (Tr. 69.) He earned a high school diploma. (Tr. 16.) His most recent occupational experience includes work as a truck driver, ranch hand, and production laborer (Tr. 92.) Since May 28, 2002, Buttz has not engaged in any substantial gainful employment. (Tr. 16.)

### *Buttz's Testimony*

At the hearing, Buttz testified that he was then participating in pain management and also, for the last two years, aquatic therapy three times per week for his back. (Tr. 340, 349-50.) Buttz stated that he has pain whenever he is not engaged in aquatic therapy and that his doctors advised against a fusion surgery. (Tr. 341.) He testified that Dr. Franco had been his treating physician for almost two years. At the time of the hearing, Buttz was taking Vicodin, Valium, and Hydrocone as needed for pain, and he was also taking Tylenol, Effexor, Neurontin, Tramadol, and Butalbital. (Tr. 342, 349.) He has maintained his weight at approximately 270 pounds, despite his doctors' advice to lose weight. (Tr. 343.) Buttz stated that he does not sleep well, getting up between two to four times each night due to pain. He showers and dresses himself to some extent, but he needs his wife's help

2

with his shoes, socks and shirts.  (Tr. 344.)  His daily activities include lying in his recliner, watching television, sitting around the house, visiting with his children and helping them with their school work, napping, and grocery shopping in his wheel chair with his wife.  (Tr. 345-46.)  Buttz regularly uses a cane.  (Tr. 346.)  Buttz feels that reclining and aquatic therapy give him the most relief.  (Tr. 350.)

Buttz testified that he can only walk for varying periods of time, between seven and twenty minutes.  (Tr. 347.)  He has difficulty sitting and lifting his arms above his head.  (Tr. 348.)  Buttz experiences three or four headaches weekly, and he also experiences incontinence after sitting.  (Tr. 349.)  Buttz ended his testimony by stating that he feels depressed as a result of his physical limitations.  (Tr. 350.)

### *Medical Expert's Testimony*

A medical expert, James A. Mailliard, M.D., testified at the hearing.[1]  Dr. Mailliard testified that Buttz suffered from back problems of a muscular nature and depression.  (Tr. 351.)  He testified that Buttz has a limited ability to stand, walk, bend, sit and kneel, and he cannot climb or crawl.  (Tr. 352-53.)  Buttz can stand or walk four hours daily and sit for four hours daily, with breaks.  (Tr. 352.)  He can occasionally lift up to twenty pounds.  (Tr. 354.)  Dr. Mailliard testified that, in a work situation, Buttz needs more than just mid-morning and lunch breaks.  (Tr. 354.)  When asked about Dr. Franco's findings, Dr. Mailliard said that while they were "rather difficult to pin down" he would not "grossly disagree" with Dr. Franco's findings.  (Tr. 356.)

---

[1] Dr. Mailliard's resume is in the record.  (Tr. 42.)

***Vocational Expert's Testimony***

A vocational expert, Gail F. Leonhardt, also testified at the administrative hearing.[2] The ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's age, education, and work experience who could: lift and carry no more than ten pounds occasionally or frequently; stand and/or walk for four hours per work day; sit for six hours per work day; and needed a five-minute break per hour. (Tr. 358.) This individual could never climb, crouch, crawl, walk on uneven ground, or kneel and could no more than occasionally bend or stoop or reach above shoulder height bilaterally. (Tr. 358-59.) He would need to avoid concentrated exposure to extremes of temperatures and vibrating machinery and all exposure to hazardous machinery. (Tr. 359.) He would also need to use of a chair with a flexible back chair at his work station. (Tr. 361.) Applying this hypothetical, the vocational expert testified that Buttz would be unable to perform his past relevant work. (Tr. 359.) However, the vocational expert testified that Buttz could perform the sedentary job of a telephone solicitor, widely available both in Nebraska and nationally. (Tr. 360-61.)

***Documentary Evidence Before the ALJ***

In addition to oral testimony, the ALJ considered medical evidence. Medical records show that in September 2001, Buttz began experiencing back pain after operating a 140-pound jackhammer three hours daily for three days. Medication and physical therapy failed to provide relief. Buttz reported numbness in his right leg. Dr. Lonnie Mercier found 60-70% normal range of movement. X-rays were normal. Dr. Mercier recommended

---

[2]Mr. Leonhardt's resume is in the record. (Tr. 62.)

Naprosyn, heat and rest.  (Tr. 138.)  In October 2001, exercises and a corset were recommended.  In October 2001, a cervical spine MRI showed a minimal paracentral disc protrusion at C5-6 and a thoracic spine MRI showed a mild paracentral disc protrusion at T4-5 and T6-7 in the right paracentral region.  (Tr. 139, 190-93.)  The MRIs showed no definite disc herniation.  The pain might have resulted form a soft tissue injury.  In November 2001, Buttz complained that his pain was present all day, increased with walking, and woke him up at night.  (Tr. 139.)  A November 2001, neurological evaluation by Edward M. Schima, M.D., resulted in the following diagnoses: cervical strain; thoracic strain; and asymptomatic cervica and thoracic disc disease.  (Tr. 140.)  Dr. Schima recommended an epidural block if the pain persists, and if a block does not help then he recommended a CT myelogram with attention to the lower cervical and thoracic regions.  (Tr. 140-41.)  On November 21, 2001, Dr. Pat Chudomelka performed a cervical epidural that resulted in a 30% decrease in symptoms.  On December 18, 2001, Dr. Chudomelka followed with a thoracic epidural.  (Tr. 185-188.)  The thoracic epidural did not result in a significant decrease in symptoms.  Finally, on January 24, 2002, Dr. Chudomelka performed a thoracic facet injection, resulting in a 10-15% decrease in symptoms.  (Tr. 183-84.)  Connie Lorenzo, M.D., noted that Buttz had some mild thoracic degenerative disc disease, although the levels did not correspond to Buttz's pain levels.  Dr. Lorenzo noted that aquatic therapy had not provided relief and suggested that Buttz again see Dr. Franco.  (Tr. 180.)  On February 14, 2002, Dr. Franco recommended a repeated thoracic MRI with thin cuts from the T9 through the L1 region.  He changed Buttz's medication from Celebrex to Arthrotec, but if he could not tolerate the Arthrotec he was to change back to Celebrex.  (Tr. 176, 179.)

On February 21, 2002, Buttz again saw Dr. Franco. At that time Buttz had no pain radiating into his lower extremities. (Tr. 174.) Dr. Franco prescribed physical therapy for times weekly for two weeks, prescribed a brace, advised continuance of Celebrex and Ultram, and added Skelaxin as needed and nightly to aid in sleep. Dr. Franco opined that Buttz's pain was then too severe to allow him to return to work. (Tr. 175.) On March 7, 2002, Dr. Franco advised Buttz to continue wearing the brace, provided a neurostimulator, continued physical therapy four times weekly for two weeks, and refilled Celebrex and Ultram prescriptions. (Tr. 171-72.) On March 21, 2002, Dr. Franco ordered that Buttz continue to wear the brace, use the neurostimulator, go to physical therapy, and continue to take his medications. (Tr. 170.) In March 2002, on two occasions Buttz rated his pain at 5-6 on a 10-point scale. (Tr. 169, 171.) On April 4, 2002, Dr. Franco noted that Buttz continued to gain strength and endurance. He ordered various tests to rule out a renal cause of Buttz's pain and ordered continued physical therapy. (Tr. 167-68.) On April 18, 2002, Buttz reported a pain level of 2-3 during inactivity, with his average pain being a 4 and his worst pain being a 9. (Tr. 165.) On May 2, 2002, Buttz was in no apparent distress, and while his gait was slow Dr. Franco noted improvement in Buttz's ability to move his right leg. Buttz's lower extremity motor strength was intact. (Tr. 163.) On May 23, 2002, Buttz reported to Fr. Franco that he had aggravated his pain symptoms. Dr. Franco noted that physical therapy and wearing the prescribed brace helped the thoracic pain symptoms. (Tr. 161.) On June 6, 2002, Dr. Franco indicated that Buttz's acute pain was resolved and physical therapists reported that Buttz had returned to his baseline. Buttz continued to complain of right lower thoracic symptoms, though he did not have tingling or numbness extending into his legs. Dr. Franco noted that neuropsychology

reported some depression and suicidal thoughts without any intent, action or plan. Dr. Franco referred Buttz back to Dr. Chudomelka for right thoracic injections. (Tr. 159.) On June 25, 2002, Dr. Franco reported that Buttz was in moderate distress and his depression improved after taking Effexor. (Tr. 153.) Buttz had completed twelve weeks of physical therapy, and his cardiovascular fitness was much improved. (Tr. 153.) On July 11, 2002, Dr. Franco reported that Buttz continued to complain of significant pain, though addressing his pain intervention with Dr. Hudson had proved somewhat helpful. Buttz's complaints regard low back pain that sometimes radiates into his right leg. At this visit, Buttz exhibited moderate distress and discouragement due to his pain. Buttz complained of some urinary dribbling, though Dr. Franco determined that this did not represent neurologic incontinence. (Tr. 149.) On August 1, 2002, Buttz reported baseline pain symptoms but continued to complain of back pain with activity that radiated into his right buttock when he would step forward with his right foot. He continued to complain of urinary dribbling, though he had no overt incontinent episodes. Dr. Franco found Buttz to be in mild to moderate distress. Buttz had difficulty changing from a reclining to a standing position. Dr. Franco discussed Buttz's options, which included living with the pain, a disc fusion surgery with an uncertain outcome, or implantation of a morphine pump. Buttz opted to live with the pain. Additional medications were prescribed. Dr. Franco stated that Buttz was nearing maximum medical improvement. (Tr. 147.) On September 26, 2002, Dr. Franco noted that Buttz was: no longer wearing his brace; in a walking program and aquatic therapy; and in mild to moderate pain distress. Dr. Franco advised continued exercise and wearing the brace for 20% of the time. (Tr. 143-44.).

*Documentary Evidence Submitted to the Appeals Council*

The Appeals Council accepted a report of Dr. Franco dated May 17, 2004, as additional evidence. Dr. Franco opined that Buttz experienced "primarily thoracic muscular spasm with documented, multiple levels of degenerative disc disease at the thoracic and lumbar spines." (Tr. 335.) Dr. Franco explained that normally he would find an individual with complaints similar to Buttz's to be capable of sedentary work activity. However, he concluded that "with his multiple level of degenerative disc disease" Buttz was "incapable of carrying out consistent functional work activities even at a sedentary level." (Tr. 335.) Dr. Franco concluded that in Buttz's "particular situation, [he was] supportive of the Social Security Administration Claim for Disability Benefits." (Tr. 335.)

## THE ALJ'S DECISION

The ALJ found that Buttz was not "disabled" pursuant to his May 28, 2002, application for disability benefits. The ALJ framed the issue as whether Buttz was "disabled" under the Social Security Act. (Tr. 15.)

The ALJ followed the format of the sequential evaluation process set out in 20 C.F.R. §§ 404.1520 to determine whether Buttz was disabled, considering: any current work activity, the severity of any medically determinable impairment, and Buttz's residual functional capacity with regard to his ability to perform past relevant work or other work that exists in the regional and national economies. (Tr. 16-19.)

Following this analysis, the ALJ found that Buttz is not disabled. (Tr. 20.) Specifically, at step one the ALJ found that Buttz has not performed any substantial gainful work activity since the alleged onset date of disability, September 27, 2001. (Tr. 18.) At step two, the ALJ found that Buttz has the following medically determinable impairments

that are "severe" within the meaning of the SSA's regulations: degenerative disc joint; degenerative disc disease; obesity; and depression. (Tr. 18.) At step three, the ALJ found that Buttz's medically determinable impairments, either singly or collectively, do not meet section 12.04 or any other section of Appendix 1 to Subpart P of the Social Security Administration's Regulations No. 4, known as the "listings." (Tr. 18.) At step four, the ALJ determined that, despite Buttz's medically determinable impairments, he does not possess the residual functional capacity to perform any of his past relevant work. (Tr. 19.) Finally, at step five the ALJ found: (1) Buttz has the residual functional capacity to perform a significant, albeit not full, range of sedentary work that includes positions existing in significant numbers in the local and national economies. (Tr. 18, 19.) One example of a readily available sedentary occupation is telephone solicitor. (Tr. 19.) In so deciding, the ALJ weighed Buttz's testimony, finding the testimony not credible. In particular, the ALJ found Buttz's allegations of total disability disproportionate to the level of restriction that might reasonably be expected to result from the objective findings and signs. (Tr. 17.) The ALJ also considered the opinions of medical expert James A. Mailliard (Tr. 16), the results of residual functional capacity assessments by a Disability Determination Service ("DDS") evaluator, and a vocational expert, Gail Leonhardt. (Tr. 17). However, the record does not reflect that the ALJ considered the opinion of Buttz's treating physician, Dr. Franco.

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo*. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995). Rather, the

district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision. *Harris,* 45 F.3d at 1193.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Id.*; *Morse v. Shalala,* 16 F.3d 865, 870 (8th Cir. 1994). As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000); *Harris,* 45 F.3d at 1193.

## DISCUSSION

The Plaintiff argues that the ALJ's opinion is flawed in the following respects: the ALJ failed to find Dr. Franco a "treating physician" whose opinion is generally given controlling weight; and substantial evidence does not support the ALJ's decision.

### *Treating Physician*

A treating physician's opinion is entitled to substantial weight and "should not ordinarily be disregarded." *Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion is certainly entitled to significant weight when that treating physician is a specialist. In contrast, a consulting physician's opinion generally does not constitute substantial evidence. Similarly, a vocational expert's opinion based on a hypothetical, standing alone, cannot constitute substantial evidence. *Id.* If, despite these often-cited principles, an ALJ decides not to give substantial or any weight to a treating physician's

10

opinion, the ALJ must state the reasons supporting the decision. *Id.* (citing 20 C.F.R. § 404.1527(d)(2). *Id.*

Turning to Buttz's case, the ALJ never discussed the opinion of Dr. Franco, Buttz's treating physician and a specialist in rehabilitative medicine. The medical expert, Dr. Mailliard, who testified at the administrative hearing, stated that he could not "grossly disagree" with Dr. Franco's findings.[3] Buttz's treating neurologist referred Buttz to a pain specialist, Dr. Pat Chudomelka, for epidural injections, which provided minimal relief.

In summary, the ALJ and the Appeals Council appeared to base its decision solely on the testimony of the vocational expert, who responded to a hypothetical based on the testimony of the medical expert, Dr. Mailliard. Because the ALJ did not discount or otherwise discuss the opinion of Dr. Franco, the question posed to the vocational expert did not adequately reflect Buttz's impairments. The evidence of the vocational expert's testimony alone, together with selected portions of Dr. Mailliard's testimony, cannot provide substantial evidence for a conclusion of nondisability. Accordingly, the ALJ's decision concluding that Buttz is not disabled is not supported by substantial evidence based on the record as a whole.

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner has not met her burden of proving that Buttz can perform the job of telephone solicitor, or any sedentary activity. The evidence supports a finding of disability. Therefore, the final decision of the ALJ is reversed and remanded for an award of benefits.

---

[3]This statement of Dr. Mailliard's was not acknowledged in the ALJ's summary of his testimony. (TR. 16.)

IT IS ORDERED:

1. The appeal is granted;

2. The decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for an award of benefits; and

3. Judgment in favor of the Plaintiff and against the Defendant will be entered in a separate document.

DATED this 14th day of September, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge